IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-285-RJC-DCK

| | |
|---|---|
| ADAM BURCH, *as Executor of the Estate of Jimmy Wayne Burch*, <br><br> Plaintiff, <br><br> v. <br><br> OLYMPUS AMERICA, INC., OLYMPUS CORPORATION OF AMERICAS, OLYMPUS MEDICAL SYSTEMS CORP., and BRIAN ARGOTTI, <br><br> Defendants. | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiffs' Motion For Remand" (Document No. 18). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be granted.

**I. BACKGROUND**

**A. Factual**

Adam Burch ("Plaintiff") is the surviving son of Jimmy Wayne Burch and the Executor of the Estate of Jimmy Wayne Burch. (Document No. 1-1, pp. 1-2). Jimmy Wayne Burch ("Mr. Burch" or the "Decedent") suffered a multidrug resistant infection and significant injuries as a result of a contaminated TJF-Q180V duodenoscope (the "Q180V Scope") used during an endoscopic retrograde cholangiopancreatography procedure ("ERCP") at the Carolinas Medical Center in Charlotte, North Carolina between January 2014 and April 2014. (Document No. 1-1,

pp. 1-2, 8). The Q180V Scope that injured Mr. Burch was designed, manufactured, imported, distributed, marketed, promoted, assembled, and/or sold by Olympus America, Inc. ("OAI"), Olympus Corporation of the Americas, ("OCA"), and Olympus Medical Systems, Corp. ("OMSC") (together, "Olympus Defendants"). (Document No. 1-1, pp. 1, 8-9). Mr. Burch died as a result of injuries caused by the Q180V Scope on April 17, 2014. (Document No. 1-1, p. 2).

**B. Procedural**

Plaintiff filed his original complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania on May 25, 2016. (Document No. 1-1, p. 3). Plaintiff's original complaint was dismissed on December 20, 2017, "upon consideration of defendants' motion to dismiss for *Forum Non Conveniens*." Id. The "complaint was dismissed without prejudice to Plaintiff's right to refile an action in an appropriate court in North Carolina." Id. "Furthermore, Defendants' Joint Motion to Dismiss for *Forum Non Conveniens* stipulates that '**all moving parties here by agree not to contest jurisdiction** should the Court grants [sic] this Motion and Plaintiff re-files in North Carolina.'" Id. (Emphasis added).

Plaintiff filed the underlying Complaint (Document No. 1-1) in this matter on March 29, 2018, in the Superior Court of Mecklenburg County, North Carolina, Case No. 18 CVS 6462. The Complaint asserts six claims for relief against the Olympus Defendants and/or individual Defendant Brian Argotti ("Mr. Argotti") (all together, "Defendants"). (Document No. 1-1). The claims relate to the allegedly wrongful and negligent conduct of Defendants causing the death of Mr. Burch and include: (1) negligence/product liability – inadequate design; (2) negligence/product liability – failure to warn; (3) negligence; (4) fraud – intentional misrepresentation; (5) fraud – negligent misrepresentation; and (6) punitive damages –

2

N.C.Gen.Stat. § 1D-1, *et seq.* (Document No. 1-1, pp. 11-23). Counsel for Defendants accepted service of the Summons and Complaint on May 1, 2018. (Document No. 1, p. 4).

Defendants filed a "Notice Of Removal" (Document No. 1) with this Court on May 31, 2018. The "Notice Of Removal" asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Olympus Defendants have complete diversity of citizenship, the amount in controversy exceeds $75,000, and Defendant Argotti "should be disregarded for purposes of determining whether complete diversity exists among the parties." (Document No. 1, p. 5). Defendants' "Notice Of Removal" notes that Plaintiff is a citizen of North Carolina; Defendant OAI is a citizen of New York and Pennsylvania; Defendant OCA is a citizen of New York and Pennsylvania; Defendant OMSC is a foreign corporation organized and existing under the laws of Japan; and Defendant Argotti is a citizen of North Carolina. (Document No. 1, pp. 5-6). However, Defendants contend that Mr. Argotti's "citizenship must be disregarded under the doctrine of fraudulent joinder because the allegations in Plaintiff's complaint are devoid of any viable claim for relief against him." (Document No. 1, p. 6).

Also on May 31, 2018, Defendants filed three motions to dismiss: "Olympus Medical Systems Corporation's Motion To Dismiss Plaintiff's Complaint For Failure To State A Claim" (Document No. 2); Defendants Olympus America Inc. And Olympus Corporation Of The Americas' Motion To Dismiss Plaintiff's Complaint For Failure To State A Claim" (Document No. 3); and Brian Argotti's Motion To Dismiss Plaintiff's Complaint For Failure To State A Claim" (Document No. 4).

On June 15, 2018, the undersigned granted Plaintiff's consent motions for additional time to file responses to the motions to dismiss. See (Document Nos. 9, 10, 11, 15, 16, and 17). Plaintiff

3

sought, and Defendants consented to, an extension of time to respond to the pending motions to dismiss until *after* the Court ruled on Plaintiff's motion to remand. Id.

"Plaintiffs' Motion For Remand" (Document No. 18) was filed on June 29, 2018. Plaintiff contends that this Court lacks subject matter jurisdiction of the instant action because there is *not* complete diversity of citizenship between the parties. (Document No. 18, p. 1) (citing 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332(a)(1)). "Defendants' Opposition To Plaintiff's Motion For Remand" (Document No. 19) was filed July 13, 2018; and "Plaintiff's Reply In Support Of Plaintiff's Motion For Remand" (Document No. 20) was filed on July 20, 2018.

The pending "…Motion For Remand" is now ripe for review and a recommendation to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

"The existence of subject matter jurisdiction is a threshold issue, and any removed case lacking a proper basis for subject matter jurisdiction must be remanded." UMLIC Consol., Inc. v. Spectrum Fin. Servs. Corp., 3:09-CV-184-RJC-DSC, 665 F.Supp.2d 528, 532 (W.D.N.C. 2009) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96, (1998); Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999)). The party seeking federal jurisdiction has the burden of proving that subject matter jurisdiction exists. Id.

"If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). "In the absence of a North Carolina case that squarely resolves that Plaintiff's claim is not actionable or when the issue involves a judgment call and a federal court cannot say with certainty what a North Carolina court would hold, remand is proper." Geller v. Provident Life and Acc. Ins. Co., 5:10-CV-096-RLV, 2011 WL 1239835, at

4

*5 (W.D.N.C. Mar. 30, 2011) (citing Hartley v. CSX Transp., Inc., 187 F.3d 422, at 424-25 (4th Cir. 1999).

A party seeking to defeat remand by alleging fraudulent joinder "bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Hartley, 187 F.3d at 424. See also Brittain v. Pacific Cycle, Inc., 5:17-CV-148-RJC-DCK, 2018 WL 1872075, at *4 (W.D.N.C. Apr. 19, 2018). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (quoting Hartley, 187 F.3d at 424). Accordingly, courts should resolve doubts about removal in the plaintiff's favor. Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993).

To establish fraudulent joinder, the removing party must demonstrate that either: (1) "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," or (2) "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Marshall, 6 F.3d at 232; Hartley, 187 F.3d at 424. In deciding "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" Mayes, 198 F.3d at 464 (quoting AIDS Counseling and Testing Centers v Group Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964))).

> "Fraudulent joinder" is a term of art, it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists. In other words, a joinder is fraudulent if "there [is] no real intention to get a joint judgment, and ... there [is] no colorable ground for so claiming."

5

AIDS Counseling & Testing Centers 903 F.2d at 1003 (quoting Lewis v. Time Inc., 83 F.R.D. 455, 460 (E.D.Ca. 1979)).

Relying on Hartley, this Court has repeatedly held that remand will be granted where a plaintiff shows a "glimmer of hope" of supporting any claim in the complaint. See Electrolux Home Products, Inc. v. Crestmark Bank, 3:14-CV-298-RJC-DSC, 2014 WL 7183059, at *4 (W.D.N.C. Dec. 16, 2014); Sonic Automotive, Inc. v. Blanchard, 3:13-CV-356-RJC-DSC, 2013 WL 5536875, at *3-4 (W.D.N.C. Oct. 7, 2013); Geller, 2011 WL 1239835, at *4.

### III. DISCUSSION

It is undisputed that there is a lack of diversity between Plaintiff Adam Burch and Defendant Brian Argotti. Because it appears possible that one or more of the claims against Mr. Argotti are viable in state court, this Court should decline to exercise jurisdiction over this matter. As such, the undersigned will recommend that remand is appropriate. See Mulcahey, 29 F.3d at 151.

The issue before the Court is whether Mr. Argotti has been fraudulently joined. See (Document No. 1). As noted above, to establish fraudulent joinder the removing party must demonstrate that: (1) "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," or (2) "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Marshall, 6 F.3d at 232; Hartley, 187 F.3d at 424. Here, Defendants do not contend there has been "outright fraud" in the pleading of jurisdictional facts; rather, it appears that the parties agree on the basic jurisdictional facts. See (Document No. 1; Document No. 19). Instead, Defendants argue that there is no possibility that Plaintiff can establish a cause of action against Mr. Argotti in state court. Id.

In support of remand, Plaintiff argues that the Complaint includes viable claims against Mr. Argotti that far exceed the possibility standard. (Document No. 18-1, pp. 11-17). Plaintiff first notes that he is permitted to plead on "information and belief," and that whether Mr. Argotti is an Endoscopy Account Manager or an Endoscopy Support Specialist for OAI is a distinction without material effect on the allegations. (Document No. 18-1, pp. 11-12). Plaintiff contends that accepting that Mr. Argotti is "an Endoscopy Support Specialist for OAI, tasked with providing training and in-service to employees at Carolinas Medical [Center ("CMC")] for the Q180V scope," it is still possible to succeed on claims of intentional or negligent misrepresentation against him. (Document No. 18-1, p. 12).

Plaintiff asserts that Mr. Argotti was clearly in a position to communicate safety information regarding the Q180V Scope to users and patients at CMC, regardless of whether he was a salesperson or a service technician. (Document No. 18-1, p. 13). Plaintiff notes that Defendants concede that "Argotti 'may have made' statements 'to decedent and/or decedent's physicians' about the Q180V scope in his role as an Endoscopy Support Specialist for OAI." Id. (quoting Document No. 1, ¶ 25). Plaintiff also cites to attached evidence he contends shows: (1) that part of Mr. Argotti's duties for OAI was to communicate safety information about Olympus products directly to users; (2) that Mr. Argotti appears to have been a party to communications with Defendants' infection control manager, Mary Ann Drosnock, about risk mitigation strategies with respect to the Q180V Scope; and (3) that Mr. Argotti was an "educational resource[] that teach[es] about reprocessing and repair reduction." (Document No. 18-1, p. 14) (citing Document Nos. 18-2, 18-3, and 18-4). Plaintiff contends that the evidence clearly shows Mr. Argotti was "the point person tasked with disseminating vital safety information to Carolinas Medical about the Q180V scope." Id.

Next, Plaintiff argues that North Carolina law is well-settled that Mr. Argotti may be personally liable for all torts committed by him, notwithstanding the fact that he acted as the agent for another. (Document No. 18-1, p. 15) (citations omitted).

Finally, Plaintiff argues that Mr. Argotti's potential liability for product liability claims is a fact-intensive inquiry that should not be part of this jurisdictional inquiry. (Document No. 18-1, pp. 16-17). Plaintiff suggests that the Court should not resolve at this stage whether a particular Defendant was a "manufacturer" or "seller." Id.

In response to Plaintiff's motion, Defendants largely focus on Plaintiff's alleged failure to mention or rebut the "Declaration Of Brian Argotti" (Document No. 1-3). (Document No. 19). Defendants note that the sworn declaration explains that Mr. Argotti "was limited to providing training and service to medical centers who *already had acquired* medical equipment, including the Q180V Scope, from Olympus." (Document No. 19, p. 7) (citing Document No. 1-3, ¶ 2). Defendants further note that Mr. Argotti has stated that he never made any representation to CMC regarding the Q180V Scope "except those directed by his employer, and made no misleading statements at all to induce Carolinas Medical Center to acquire any Q180V Scope." Id. (citing Document No. 1-3, ¶¶ 10-12).

Defendants argue that even in cases where a representative promoted the product at issue, "courts have found that the representative cannot be held personally liable for misrepresentations absent any evidence that he or she knew or should have known of the product's dangers and, therefore, cannot be used to as a prop to destroy diversity jurisdiction." (Document No. 19, p. 8) (citations omitted). Defendants further assert that the Court should rely on Mr. Argotti's allegedly "unrefuted" declaration in finding for him in the fraudulent joinder analysis. (Document No. 19, p. 9).

Defendants also argue that pursuant to Mr. Argotti's "unrefuted declaration" he was neither the "manufacturer" nor the "seller" of the device that harmed Mr. Burch, and therefore, he cannot be liable for negligence or product liability. (Document No. 19, pp. 11-12).

Finally, Defendants argue that there is no possibility of success under claims 4 and 5 because none of the supposed misrepresentations can be attributed to Mr. Argotti personally. (Document No. 19, pp. 13-14). Defendant contends that Mr. Argotti cannot be personally liable if he only passed along statements of his employer. Id.

In reply, Plaintiff agues that the Court should reject Defendants' attempt "to conduct a trial by declaration" on the basis of Mr. Argotti's unsubstantiated declaration. (Document No. 20, pp. 5-6) (citations omitted). Plaintiff suggests that the allegations in the Complaint are more than sufficient. (Document No. 20, pp. 6-7) (citing Document No. 1-1).

> Plaintiff further alleged that defendants knew, or had reason to know, that these scopes are difficult to clean, and that residual bodily fluids and organic debris containing microbial contamination could expose patients to a serious risk of harm, including lethal infection. (Compl. ¶¶ 23, 26.) Argotti, whether he was a sales representative or support specialist, knew that the reprocessing protocol for the Q180V scope was insufficient, but continued to help his employer Olympus America Inc. and Olympus Corporation of the Americas market the scope. (Compl. ¶¶ 26, 28-30, 51.) In fact, at no time while Argotti helped his employer market the scopes in question did he provide purchasers like Carolinas Medical Center ("Carolinas Medical") with an effective reprocessing protocol. (Compl. ¶¶ 28, 34, 51, 57.)
>
> Plaintiff also alleged that Argotti intentionally, recklessly, or negligently made false or misleading representations to the decedent's physicians, both concerning the safety of the scope and the risks associated with the reprocessing protocol. (Compl. ¶¶ 65-68, 75-78.) Finally, plaintiff alleged that Argotti made these misrepresentations to physicians and staff at Carolinas Medical. (Compl. ¶¶ 66, 76.) There is no question that the allegations in plaintiff's complaint show some possibility of success on any one of the five claims made against Argotti.

9

Id. See also Watkins v. Ashley, 2014 WL 496493, at * 4 (E.D.N.C. Feb. 6, 2014) (quoting Vick v. Kapstone Kraft Paper Corp., 2011 WL 841073 at *4 (E.D.N.C. Feb 9, 2011) ("Because the court has to take all of the allegations in Plaintiff's Complaint as true, . . . the court cannot treat Ashley's declaration as 'conclusive proof of the outright frivolity of plaintiff's claim against him.'")

Plaintiff further argues that it is irrefutable that Mr. Argotti was in a position that involved sales and/or marketing functions, and in a position to make misrepresentations to users of the Q180V Scope by virtue of being a central point of contact for Defendants at CMC. (Document No. 20, p. 8). Plaintiff contends that it has adequately shown that Mr. Argotti was one of the go-to Olympus contacts for CMC and that one of his central duties as a support specialist was to disseminate marketing and safety information about the Q180V Scope. (Document No. 20, p. 11) (citing Document Nos. 18-1, 18-2, 18-3, 18-4). Plaintiff asserts that he will show that "Argotti knew the Q180V scope was defective long before plaintiff was injured and that the then-existing reprocessing protocol was insufficient to ensure the scope's safe use in subsequent patients like the decedent." (Document No. 20, p. 13).

Finally, the undersigned notes that Plaintiff's reply provides a compelling list of facts and dates that strongly suggest that Mr. Argotti knew, or should have known, that the Q180V Scope was dangerous well before it was used on Mr. Burch. (Document No. 20, pp. 15-16) (citations omitted).

Considering the entire record and resolving all issues of law and fact in Plaintiff's favor, the undersigned is persuaded that this matter should be remanded to the Superior Court of Mecklenburg County. The allegations appear sufficient to support one or more claims against Mr. Argotti. Moreover, Defendants acknowledge that a representative such as Mr. Argotti may be liable if there is evidence that he knew or should have known of the product's dangers. See

10

(Document No. 19, p. 8). There is enough alleged in the Complaint, and/or in the record before the Court, to indicate that it is possible Mr. Argotti knew or should have known of dangers associated with the Q180V Scope.

The undersigned finds a case from the United States District Court for the Central District of California to be instructive here. See Young v. Olympus America, Inc. et al., 2015 WL 3466305 (C.D.Ca. June 1, 2015). It is unclear why neither side cited to this case, as it appears to be remarkably similar to the instant action involving: state law claims for products liability, negligence, intentional and negligent misrepresentations; the Q180V Scope; endoscopy support specialist defendants; Olympus defendants; injuries and deaths related to contaminated Q180V Scopes in 2014; alleged fraudulent joinder; and motions to remand. Id. In Young v. Olympus, the court granted Plaintiffs' six (6) motions to remand. Young, 2015 WL 3466305 at * 10.

In that decision, the court noted that defendants had submitted affidavits stating that endoscopy support specialists "work with health care providers who have purchased Olympus Defendants' duodenscopes to assist with operating and cleaning the devices." Young, 2015 WL 3466305 at * 4. The court then opined that "[a]ssuming Individual Defendants knew that the Q180V Scope's existing reprocessing protocols were inadequate, as Plaintiffs allege, then their failure to inform physicians and health care providers of as much—as well as their alleged deliberate misrepresentations to the contrary—could support Plaintiffs' claims." Young, 2015 WL 3466305, at *5.

The Young decision also counters defendants' arguments that they did not know about problems with the Q180V Scope by listing a significant history of drug-resistant infections as a result of contaminated Q180V Scopes around 2012-2014; including "142 reports of contaminated

11

duodenoscope devices, including those manufactured and distributed by Olympus Defendants."

Young, 2015 WL 3466305, at *6.

In reaching its conclusion, the Young court stated:

> The Court recognizes that this evidence does not directly demonstrate Individual Defendants' actual knowledge of any foreign and domestic outbreaks linked to the Q180V Scope, or that they knew customers and researchers had expressed concern regarding the efficacy of the existing reprocessing protocols. The **evidence does, however, show that Olympus Defendants were aware of some potential risks associated with the device, as well as the need for proper reprocessing to guard against the spread of drug-resistant, potentially lethal infections**. (*See, e.g, id.* Ex. F.) Given that Individual Defendants work for the device distributor and interface directly with physicians and health care providers, who may have received the safety alerts or otherwise heard about problems related to the Q180V Scope, **it is reasonable to assume that they had at least some notice or knowledge of the possibility that the existing protocols were inadequate**.
>
> At this stage of the proceedings, the Court need not decide whether this evidence is sufficient to establish a claim for negligence or misrepresentation against Individual Defendants. It is enough that Plaintiffs have raised a factual dispute regarding the issue of knowledge. **The possibility that Individual Defendants knew the existing reprocessing protocols were inadequate precludes the Court from finding that Plaintiffs could not state a claim** under well-settled California law.

Young, 2015 WL 3466305, at *7 (emphasis added). The undersigned is persuaded that the Young court's analysis and conclusion are applicable to the instant case.

Another action with significant similarities to this case, and also not cited by either party, is Warner v. Olympus America, Inc. et al., 3:16-CV-488-FDW-DSC (W.D.N.C. 2016); see also Warner v. Olympus America, Inc. et al., 2016 WL 3031723 (E.D.Pa. May 25, 2016); and "Duodenoscope Infection Death Suit Shifts From Pennsylvania To North Carolina" 23 No. 9 Westlaw Journal Medical Devices 9. Warner also involves a Q180V Scope used at Carolinas Medical Center that allegedly led to an antibiotic-resistant infection and ultimately the death of

Willie Warner, Jr. on November 24, 2013.  Id.  It seems possible, if not likely, that Mr. Argotti was aware of Mr. Warner's death allegedly caused by a contaminated Q180V Scope, just a few months before Mr. Burch underwent his procedure with a Q180V Scope.

The undersigned also notes that the parties' briefs gave little attention to the circumstances surrounding the early stages of this action where Plaintiff filed in Pennsylvania.  It might have been interesting or helpful to know more about whether all the same Defendants, including Mr. Argotti, were parties to that original action, and to know more about the purported representation Defendants made to that court that they would not oppose jurisdiction in a North Carolina court.  See (Document No. 1-1, p. 3).

Finally, the undersigned again finds this Court's decision in Geller to be instructive:

> This Court cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case.  While [Plaintiff]'s claim may not ultimately succeed, ultimate success is not required to defeat removal.  *Marshall,* 6 F.3d at 233.  Instead, there need be only a slight possibility of recovery.  *Id.*  The Court having identified a chance of success for Plaintiff, the jurisdictional inquiry ends.

Geller, 2011 WL 1239835, at *5.  The undersigned is persuaded that Plaintiff has at least a slight possibility, or a "glimmer of hope," that one or more claims against the non-diverse party, Defendant Brian Argotti, may be successful.  See Watkins v. Ashley, 2014 WL 496493 at *4 (E.D.N.C. Feb. 6, 2014).

### IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Plaintiffs' Motion For Remand" (Document No. 18) be **GRANTED**, and that this matter be **REMANDED** to the Superior Court of Mecklenburg County, North Carolina.

**IT IS FURTHER RECOMMENDED** that the pending Motions To Dismiss (Document Nos. 2, 3, and 4) be **DENIED AS MOOT**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: February 19, 2019

David C. Keesler
United States Magistrate Judge

14

Case 3:18-cv-00285-RJC-DCK   Document 21   Filed 02/19/19   Page 14 of 14